UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.   ) | CR-05-09-B-W |
| ) | |
| STEVE MCCARTY ) | |

**PRESENTENCE ORDER**

As the Defendant Steve McCarty has pleaded guilty to possession of a sawed-off shotgun, a violation of 26 U.S.C. § 5861(d), this Court concludes he is subject to the "destructive device" enhancement under U.S.S.G. § 2K2.1(b)(3)(B).

**I. STATEMENT OF FACTS**

On October 12, 2005, Mr. McCarty pleaded guilty, *inter alia*, to possession of a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. § 5861(d). Pursuant to U.S.S.G. § 2K2.1(a)(5), Mr. McCarty's base offense level is 18, since the offense "involved a firearm described in 26 U.S.C. § 5845(a)." In its Presentence Investigation Report (PSR), however, the Probation Office recommended a two level upward adjustment pursuant to U.S.S.G. § 2K2.1(b)(3)(B), because the sawed-off shotgun constituted a "destructive device" within the meaning of 26 U.S.C. § 5845(f)(2). *PSR* ¶ 17. Mr. McCarty objected. *Id.* at 13. He contends that the adjustment amounts to improper "double counting," the sawed-off shotgun does not constitute a "destructive device" for purposes of the § 2K2.1(b)(3)(B) enhancement, and this Court's determination that the firearm is not an "antique" within the meaning of 26 U.S.C. § 5845(f) would violate the Constitution's separation of powers provisions. *Def.'s Sent. Mem.* at 3-6 (Docket # 71).

## II. DISCUSSION

### A. Double Counting

Since his offense involved possession of a sawed-off shotgun, Mr. McCarty does not challenge the determination that his base offense level should be 18 under U.S.S.G. § 2K2.1(a)(5).[1] He objects, however, to the imposition of a two-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B) for possession of the same shotgun under the theory that it is a "destructive device." Mr. McCarty argues that the Guidelines have already enhanced his sentence for possession of a sawed-off shotgun by imposing a much higher base offense level than would have been imposed for possession of other types of firearms and to enhance it again, based solely on the same conduct, is to double count. *Def.'s Sent. Mem.* at 3-4 (Docket # 71).

Double counting occurs "'when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines.'" *United States v. Rohwedder*, 243 F.3d 423, 426-27 (8th Cir. 2001) (quoting *United States v. Hipenbecker*, 115 F.3d 581, 583 (8th Cir. 1997)). However, the First Circuit reminded us that "[d]ouble counting in the sentencing context 'is a phenomenon that is less sinister than the name implies.'" *United States v. Lilly*, 13 F.3d 15, 19 (1st Cir. 1994) (quoting *United States v. Zapata*, 1 F.3d 46, 47 (1st Cir. 1993)). Double counting "is often perfectly

---

[1] Section 2K2.1(a)(5) provides a base offense level of 18 for possession of a firearm described in 26 U.S.C. § 5845(a). Section 5845(a) defines "firearm" to mean "(1) a shotgun having a barrel or barrels of less than 18 inches in length; [or] (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length . . . ." 26 U.S.C. § 5845(a)(1), (2). Mr. McCarty's shotgun had an overall length of twenty-four inches and a barrel length of eleven inches. *Pros. Version* at 2 (Docket # 57).

proper" and the Guidelines themselves are "the most helpful aid in the task of separating permissible double counting from its impermissible counterpart." *Id.*

Mr. McCarty's argument fails because if it is double counting, it is permissible under the Guidelines.[2] Even assuming *arguendo* that Mr. McCarty's possession of a short-barreled shotgun were counted twice, first in the base offense level and next in the enhancement, under First Circuit authority, the same factor may "serve double duty," if the Guidelines direct it. *Zapata*, 1 F.3d at 50 (citing *United States v. Newman*, 982 F.2d 665, 673 (1st Cir. 1992)) (holding that the Commission's express prohibition of double counting in certain instances indicates its intent to permit double counting in other instances); *United States v. Vazquez-Molina*, 389 F.3d 54, 60 (1st Cir. 2004), *vacated on other grounds and remanded for reconsideration in light of Booker*, __U.S.__, 125 S. Ct. 1713 (2005) ("The same fact sometimes can serve multiple purposes at sentencing and

---

[2] If the current version of the Guidelines applies to Mr. McCarty's conduct, there would be no double counting, because the firearms justifying the application of U.S.S.G. § 2K2.1(a)(5) are not necessarily "destructive devices" under U.S.S.G. § 2K2.1(b)(3). "Destructive device" under § 2K2.1(b)(3) is currently defined to have "the meaning given that term in 26 U.S.C. § 5845(f)." U.S.S.G. § 2K2.1 application note 1. Mr. McCarty's argument is premised on the notion that all firearms described in § 5845(a) are destructive devices and, therefore, to impose an additional penalty for possession of a destructive device under U.S.S.G. § 2K2.1(b)(3)(B) increases his punishment for "a kind of harm already fully accounted for" in the higher base offense level of 18. This argument misses the mark, however, because not all the firearms in § 5845(a) are destructive devices. For example, a conviction for illegally possessing a silencer, which is a "firearm" under § 5845(a), results in a base offense level of 18 under § 2K2.1(a)(5), but would not be subject to the two-level enhancement under § 2K2.1(b)(3)(B), because a silencer does not appear to be a destructive device under § 5845(f). Under the current version, since not all firearms under § 2K2.1(a)(5) are destructive devices under § 2K2.1(b)(3) and, the two provisions do not "fully account for" the "same kind of harm." *Rohwedder*, 243 F.3d at 426-27.

This provision of the Guidelines was changed effective November 1, 2004. *See* U.S.S.G. Supplement to Appendix C, amend. 669. The earlier version of application note 1 defined "destructive device" as being "a type of firearm listed in 26 U.S.C. § 5845(a) . . . ." U.S.S.G. § 2K2.1 application note 4 (pre-November 1, 2004 version). This permutation of the Guidelines' commentary could be construed as including all firearms listed in § 5845(a) within the definition of "destructive device." *But see United States v. Wynn*, 365 F.3d 546, 548-49 (6th Cir. 2004), *vacated on other grounds and remanded for reconsideration in light of Booker*, 543 U.S. 1102 (2005) (rejecting argument that all firearms listed in § 5845(a) are destructive devices under pre-November 1, 2004 version). As the earlier version of the Guidelines in effect when Mr. McCarty committed this offense may benefit him, this Court will not base its conclusion on an application of the current version. *See United States v. Harotunian*, 920 F.2d 1040, 1042 (1st Cir. 1990). Whether the *ex post facto* concern about application of an amended version of the Guidelines exists with the same force under an advisory guideline regime remains intriguing, but unanswered.

3

those multiple uses are generally permissible except in instances in which the sentencing guidelines explicitly forbid double counting." (citations omitted)); *United States v. Alicea*, 205 F.3d 480, 486 n.7 (1st Cir. 2000) ("We do not mean to imply, however, that double-counting is never permissible. The contrary is true." (citations omitted)). Here, the Guidelines explicitly direct it. The Guidelines expressly impose the destructive device enhancement for possession of a short-barreled shotgun:

> A defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) (e.g., subsection (a)(1), (a)(3), (a)(4)(B), or (a)(5)), and the applicable enhancement under subsection (b)(3). Such devices pose a considerably greater risk to the public welfare than other National Firearms Act weapons.

U.S.S.G. § 2K2.1 application note 8.

This conclusion is consistent with decisions of other courts. *See United States v. Henry*, 417 F.3d 493, 494 (5th Cir. 2005) (per curiam), *cert. denied*, __U.S.__, 126 S. Ct. 673 (2005) (citing U.S.S.G. § 2K2.1 application note 11, the predecessor to U.S.S.G. § 2K2.1 application note 8) ("[T]he guidelines allow the same weapon both to provide the foundation for the base offense level and to support a two-level increase, if the weapon is a 'destructive device.'"); *United States v. Hardy*, 393 F.3d 747 (8th Cir. 2004); *United States v. Wynn*, 365 F.3d 546, 547 (6th Cir. 2004), *vacated on other grounds and remanded for reconsideration in light of Booker*, 543 U.S. 1102 (2005) (quoting U.S.S.G. § 2K2.1 application note 11, the predecessor to U.S.S.G. § 2K2.1 application note 8) ("Application Note 11 to § 2K2.1 permits what would otherwise appear to be 'double counting' by expressly providing that 'a defendant whose offense involves a destructive device receives both the base offense level from the subsection applicable to a firearm listed in 26 U.S.C. § 5845(a) . . ., and a two-level enhancement under [§ 2K2.1(b)(3)].'").

This Court concludes no improper double counting would result from imposition of a § 2K2.1(b)(3)(B) enhancement to Mr. McCarty's offense level under § 2K2.1(a)(5).

### B. Definition of Destructive Device

Mr. McCarty argues that his sawed-off shotgun "does not qualify for . . . [an] enhancement under § 2K2.1(b)(3) because it is not the type of firearm included in the definition of 'destructive device.'" *Def.'s Sent. Mem.* at 4 (Docket # 71). The commentary to § 2K2.1 states that "'destructive device' has the meaning given that term in 26 U.S.C. § 5845(f)." U.S.S.G. § 2K2.1 application note 1. Section 5845(f) defines "destructive device," in relevant part:

> [A]ny type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, *except* a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes[.]

26 U.S.C. § 5845(f)(2) (emphasis supplied).

Mr. McCarty posits that his sawed-off shotgun falls within the "shotgun" exception to the destructive device definition.[3] His first argument is that his shotgun, even though short-barreled, is still undoubtedly a shotgun and, therefore, by the express terms of the statute cannot be a destructive device. *See Def.'s Sent. Mem.* at 4-5 (Docket # 71). His second argument rests largely on the absence of any findings by the Secretary recognizing particular firearms as suitable or unsuitable for lawful sporting purposes. *Id.*

---

[3] The term "shotgun" means:
> [A] weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned and made or remade to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of projectiles (ball shot) or a single projectile for each pull of the trigger, and shall include any such weapon which may be readily restored to fire a fixed shotgun shell.

26 U.S.C. § 5845(d).

5

at 5 ("[T]here is no evidence that the Secretary has made any determination regarding the Defendant's shotgun or its attributes which caused the Secretary to find it not generally recognized as particularly suitable for sporting purposes.").

Mr. McCarty's argument, however, runs counter to the weight of authority. *Henry*, 417 F.3d at 494; *Hardy*, 393 F.3d at 748-49; *Wynn*, 365 F.3d at 550-52; *United States v. Lee*, 351 F.3d 350, 351 n.1 (8th Cir. 2003) (summarily affirming the district court's conclusion that "an unregistered sawed-off . . . shotgun[] meets the statutory definition of 'destructive device'" as set forth in § 5845(f)); *see also United States v. One Sentinel Arms Striker-12 Shotgun Serial No. 001725*, 416 F.3d 977, 978-80 (9th Cir. 2005), *cert. denied*, __U.S.__, 126 S. Ct. 772 (2005) (concluding a Striker-12 shotgun is a destructive device under § 5845(f)); *Demko v. United States*, 216 F.3d 1049, 1052-53 (Fed. Cir. 2000) (a military-type shotgun is not one suitable for sporting purposes and fits within § 5845(f)(2)'s definition of "destructive device"). In *Wynn*, the Sixth Circuit performed a careful examination of legislative history of the Gun Control Act of 1968 in concluding that sawed-off shotguns fall within § 5845(f)(2)'s definition of a "destructive device."[4] 365 F.3d at 551-52. As *Wynn* demonstrates, the legislative history of the Gun Control Act makes clear that Congress did not intend to except unregistered sawed-off shotguns from the definition of "destructive device."

---

[4] *Wynn* determined that the House version of the bill clarified that in general shotguns were not to be considered destructive devices; however, its version expressly excluded short-barreled shotguns from this exemption. 365 F.3d at 551. Congress adopted the Senate definition of destructive device, but stated it was "essentially the same as the House bill." *Id.* (quoting Conf. Rep. No. 90-1956 (1968), *reprinted in* 1968 U.S.C.C.A.N. at 4427). The Senate formulation excluded shotguns and shotgun shells the Secretary finds to be suitable for sporting purposes, any device the Secretary finds to be an antique or a rifle the owner intends to use solely for sporting purposes. *Id.* at 552. *Wynn* concluded that "the only types of firearms that are not considered destructive devices for the purposes of [U.S.S.G.] § 2K2.1 are those that are used 'solely for sporting, recreational, or cultural purposes,' 18 U.S.C. § 921(a)(4) and 26 U.S.C. § 5845(f)(3), or, by necessary inference, ones that have a bore of one-half inch or less in diameter. 18 U.S.C. § 921(a)(4)(B) and 26 U.S.C. § 5845(f)(2)." *Id.*

6

The First Circuit has recognized that sawed-off shotguns serve no sporting purpose. In *United States v. Fortes*, the First Circuit noted that "sawed-off shotguns are inherently dangerous, lack usefulness except for violent and criminal purposes and their possession involves the substantial risk of improper physical force." 141 F.3d 1, 8 n.3 (1st Cir. 1998) (quoting *United States v. Hayes*, 7 F.3d 144, 145 (9th Cir. 1993)). Other courts have reached the same conclusion. *See United States v. Serna*, 309 F.3d 859, 864 (5th Cir. 2002) ("[W]e have determined that use for violence is the primary purpose for a sawed-off shotgun."); *United States v. Linson*, 276 F.3d 1017, 1019 (8th Cir. 2002) (sawing off a shotgun hinders, rather than aids, sport shooting); *United States v. Johnson*, 246 F.3d 330, 335 (4th Cir. 2001) ("possession of [a sawed-off shotgun] always creates a serious potential risk of physical injury to another"); *United States v. Brazeau*, 237 F.3d 842, 845 (7th Cir. 2001) (same); *United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999) (sawed-off shotguns are inherently dangerous and lack usefulness except for violent and criminal purposes); *Hayes*, 7 F.3d at 145 (same).

Mr. McCarty finally argues that this Court would violate the doctrine of separation of powers if it were to make a judicial determination regarding the suitability of sawed-off shotguns for lawful sporting purposes.[5] *See Def.'s Sent. Mem.* at 5 (Docket # 71). He contends that Congress delegated the power to make such a determination

---

[5] It strikes this Court that the separation of powers argument – both here and regarding the definition of antique - is a misnomer. Taking Mr. McCarty's argument at face value, he is contending that Congress expressly delegated the authority to interpret the meaning of the statutory terms, "particularly suitable for sporting use" and "antique," to the executive branch. But, this delegation is not of constitutional dimension. It is a statutory directive. Mr. McCarty can hardly be claiming that this Court is without constitutional authority to interpret statutes, so what he must be arguing is that this Court has misconstrued its statutory authority or has interpreted the phrases incorrectly.

The argument also strikes this Court as a non-starter. Congress has enacted 26 U.S.C. § 5845(f). It is the law of the land. It may be true that Congress contemplated that the Secretary, using his or her expertise, would explicate the meaning of these terms, but if the Secretary failed to do so, this inaction cannot invalidate the law nor remove this Court's obligation to interpret and apply it.

7

solely to the executive branch, and any judicial assumption of that delegation would result in a constitutional violation. *Id.* Under First Circuit precedent, however, a sawed-off shotgun is not "suitable for sporting purposes" within the meaning of § 5845(f) under any conceivable definition. *See Fortes*, 141 F.3d at 8 n.3; *Hardy*, 393 F.3d at 749 (court concluded that sawed-off shotgun was a destructive device even though "[n]either side point[ed] to any finding by the Secretary").

Based on the legislative history of the Gun Control Act and subsequent circuit court precedent, this Court concludes that unregistered sawed-off shotguns serve no sporting purpose and fall within § 5845(f)(2)'s definition of a destructive device.

### C. Shotgun as Antique

Mr. McCarty argues that his sawed-off shotgun does not fit the definition of "destructive device" because it is an antique. *Def.'s Sent. Mem.* at 6 (Docket # 71); 26 U.S.C. § 5845(f) ("The term 'destructive device' shall not include any device which . . . is an antique . . . ."). Mr. McCarty claims that because the statute contemplates that the Secretary make a finding that a particular firearm is or is not an antique, this Court cannot do so without encroaching upon an area Congress has expressly delegated to the Secretary. *Def.'s Sent. Mem.* at 6 (Docket # 71).

Mr. McCarty has waived this argument. He has admitted to a violation of 26 U.S.C. § 5861(d), which incorporates the definition of "firearm" under 26 U.S.C. § 5845(a). Section 5845(a) defines "firearm" to exclude "an antique firearm or any device (other than a machinegun or destructive device) which, although designed as a weapon, the Secretary finds by reason of the date of its manufacture, value, design, and other characteristics is primarily a collector's item and is not likely to be used as a weapon." A

8

violation of § 5861(d) is premised on possession of a firearm that is not an antique within this definition.  If, as Mr. McCarty has admitted, the firearm is not an antique for purposes of criminal responsibility, it cannot be an antique for purposes of sentencing, since the applicable definitions are the same.

In addition, the factual predicate is not present for this argument, because there is no evidence Mr. McCarty's Springfield 18D would under any circumstances fit within the statutory definition of "antique":

> [A]ny firearm not designed or redesigned for using rim fire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898 (including any matchlock, flintlock, percussion cap, or similar type of ignition system or replica thereof, whether actually manufactured before or after the year 1898) and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

26 U.S.C. § 5845(g).  Mr. McCarty possessed a sawed-off Savage Springfield 18D Model, twelve gauge shotgun.  The Government's Version of the Offense and the PSR do not establish the date Mr. McCarty's shotgun was manufactured. Assuming the Government can demonstrate at the sentencing hearing that Mr. McCarty's Savage Springfield shotgun was not manufactured "in or before 1898," the firearm in this case does not constitute an "antique firearm" under § 5845(g) and cannot be considered an antique for purposes of the destructive device determination.

### III.  CONCLUSION

This Court concludes that the Defendant Steve McCarty is subject to the two-level enhancement under U.S.S.G. § 2K2.1(b)(3)(B).

SO ORDERED.

          <u>/s/ John A. Woodcock, Jr.</u>
          JOHN A. WOODCOCK, JR.
          UNITED STATES DISTRICT JUDGE

Dated this 22nd day of March, 2006